KEHR (SMITH v.). See Case No. 13,071.

---

## Case No. 7,647.

### In re KEILER et al.

[18 N. B. R. 10.][1]

District Court, S. D. New York. May 17, 1878.

INVOLUNTARY BANKRUPTCY—CREDITOR'S PETITION—AMENDMENT—MALA FIDES — FALSE VERIFICATION—INCONSISTENT OATHS—STATE INSOLVENCY PROCEEDINGS.

1. It is within the power and is the duty of the court to set aside summarily any process ob-

---

[1] [Reprinted by permission.]

tained by fraud and deception practiced upon itself. The exercise of this power is absolutely essential to the purity of the administration of justice.

2. Where verified petitions are presented purporting to be in the form required by law, and the petitioners know facts sufficient to put them on inquiry, and such verifications are false, such petitions will be summarily dismissed, and all concerned in preparing and presenting them will be subject to the grave consequences which result from the practice of fraud and deception on the court.

3. Co-petitioners cannot be held innocent of and not privy to the fraud and falsehood practiced in their name by their co-petitioners. unless their innocence clearly appears. Petitions in bankruptcy proceedings are to be considered as the joint act of all the petitioners.

4. The provision of the statute allowing amendments to petitions was not intended to allow creditors recklessly and falsely to make and swear to their petition, which they know to be false, and then to have others join in and carry it on.

5. The acts of the state courts, done in the due exercise of their jurisdiction. not conflicting with the proper decrees and jurisdiction of the federal courts, are valid and binding on the federal courts.

6. The injunction order issued on a creditor's petition should conform to the language of the statute.

[In the matter of Raphael Keiler, Leopold Wormser, and Herman Kingsbury, bankrupts.]

Richard S. Newcombe and Albert Cardozo, for alleged bankrupt Keiler.

Gershon A. Seixas, David Leventritt, and William F. Shepherd. for alleged bankrupts Wormser and Kingsbury.

Alexander Blumensteil, for petitioning creditors.

Melville H. Regensburger, for receiver.

CHOATE, District Judge. On the 7th day of May, 1878, upon a petition signed by six parties, and verified by the first five of them, alleging in due form that they were creditors of the firm of Keiler, Wormser & Kingsbury, and that they verily believed that they constituted one-fourth in number of all the creditors of said firm whose claims were provable in bankruptcy, an order to show cause why the said copartners should not be adjudged bankrupts was issued, returnable May 18. The petition alleged several acts of bankruptcy, the concealment of property so that it could not be taken on legal process, the fraudulent suspension of commercial paper and the procuring of the property of the debtors to be taken on legal process, and the petition was accompanied by the usual affidavits of the several petitioners to their several claims against the firm as set forth in the petition, and by affidavits to the acts of bankruptcy. The act of bankruptcy alleged as the procuring of the debtors' property to be taken on legal process was, "that the debtors being insolvent and in contemplation of insolvency, did, on the 7th day of May, 1878, procure their property to be taken on legal process, with intent by such disposition of their property to defeat and delay the operation of the Revised Statutes, etc., title 'Bankruptcy,' in that on or about the said day the said firm applied to one of the justices of the supreme court of the state of New York for the appointment of a receiver of all their partnership effects, and an order was, on the 7th day of May, 1878, made by said court, appointing one Fred. Lewis as receiver." The accompanying affidavits showed that the receiver had been appointed, but had not given bond nor qualified, nor taken possession of the property. The fraudulent suspension of commercial paper was alleged with regard to two notes maturing on the 4th of May, 1878, which it was averred the firm had abundant assets to pay, but that they refused to pay the same; and an injunction was asked for and issued, on this petition and these affidavits, restraining the party so appointed receiver from taking possession of the firm property, besides the usual injunction restraining the debtors and all other persons from interfering with the property otherwise than to preserve the same.

A motion is now made, on behalf of Keiler, one of the alleged bankrupts, that the order to show cause and the injunction be vacated, and the petition dismissed, on the ground, among others, that the verification of the petition was knowingly false on the part of the petitioning creditors at the time it was made. This motion was heard upon affidavits, and upon all the papers used in the supreme court on the motion for the appointment of a receiver, and among these papers was a petition or request to the supreme court, in which all these petitioning creditors united with other creditors of the firm in the course of the proceedings in that court. This petition or request was to the effect that the court should appoint as receivers the alleged bankrupts Wormser and Kingsbury, and it was signed by thirty-five creditors of the firm, two of the petitioning creditors in this court having signed it, one in the eighteenth and the other in the thirty-second place in the order of the signatures respectively. It also appeared by the papers that one of the petitioning creditors—the same who signed the said petition or request in the eighteenth place—had made an affidavit used in the action in the supreme court, stating, among other things. that he was the bookkeeper of the firm, and that the whole number of creditors of the firm was forty-three.

A motion was also made by the alleged receiver, on the papers on which the injunction was granted, to modify the same by striking out that part of the order specially restraining the receiver from taking possession, on the ground that the injunction in that respect was one which this court could not legally or properly grant, and that on the petition and affidavits the receiver's title appeared to be a vested title, that by operation of law on the facts stated he was in possession, and that therefore this court could not divest

him of the possession of the property, nor should by injunction restrain him from taking possession of it. Both motions have been heard together. The petitioning creditors, to meet the motion to dismiss the petition, have produced the affidavit of one of said creditors, being the same person who signed, as the thirty-second, the petition or request presented to the supreme court, to the effect that the petition was presented and is intended to be prosecuted in good faith. The petitioning creditor who was also the bookkeeper makes an affidavit used by the petitioning creditors in opposing this motion, but he makes no explanation of his inconsistent oaths —the one in this court and the one in the state court—except that he says he did not know how many creditors would sign and verify the petition after him; and both of these petitioners alleged that they acted under the advice of counsel. Another of the petitioning creditors makes affidavit to what occurred in the supreme court at the hearing before the judge at 2 o'clock on the 7th of May, a few hours before he verified the petition, at which hearing counsel urged the right of these thirty-five creditors, of whom he was one, to be heard; but he says nothing as to his good faith in making his verification to the petition. The other three petitioning creditors make no affidavits, but on behalf of the petitioning creditors is presented a great mass of papers, most of which were used in the actions in the supreme court, which, it is claimed by the counsel for Wormser and Kingsbury and their creditors, tend to show that the action of Keiler and his attorneys in said actions in the supreme court have been oppressive to his copartners and to the creditors of the firm especially in procuring the appointment of an unsuitable person, as it is claimed, as receiver; and that the action of the court in the appointment of the receiver was oppressive and unjust; that Keiler has no real interest in the property, and has been guilty of gross violations of the partnership relation, and has improperly withdrawn the funds of the partnership; and that his action and the proceedings therein were parts of a plot arranged between him and said Lewis and other persons to ruin his copartners and get possession of the property of the firm; as to all which matters it is proper to say there are on the other side counter statements, denials, explanations and re-recrimination, the merits of which I have had no occasion to examine.

It appears from these papers that the suit of Keiler against Wormser and Kingsbury was commenced April 25th, 1878, and on the same day an injunction was granted against their interfering with the firm property, pending the decision of the plaintiffs' motion for the appointment of a receiver. That on the 27th of April Wormser and Kingsbury commenced an action against Keiler, and obtained an injunction against him from interfering with the firm property pending the motion of the plaintiffs in that action for the appointment of a receiver; that each of the parties, in their complaint, charged against the other party various acts injurious to the firm and acts in violation of the duties of partners. Both motions for the appointment of a receiver came on before the same judge who had granted the injunctions on the 6th of May, and he, after a hearing, announced in writing, on the 7th of May, his decision or opinion, which concluded as follows: "Fred. Lewis appointed receiver, bonds $100,000." The formal order was not signed by the judge till the next day, the 8th of May, and when signed, it was dated as of the 7th of May. At one o'clock on the 7th of May notice was served on the attorney of Wormser and Kingsbury for the settlement of the order at 2 o'clock the same day. All the parties appeared, and the counsel for Wormser and Kingsbury asked and obtained a delay of the settlement of the order till the 8th of May, at 10 o'clock, to prepare amendments to the proposed order. On the same afternoon, May 7th, the creditors' petition in bankruptcy was prepared and presented to this court by different counsel, and the order to show cause thereon and the injunction were issued by this court and served on the alleged bankrupt, Keiler, and his attorneys and the said Lewis.

It is insisted on the part of said Keiler that the adjournment of the settlement of the order was asked for and obtained deceitfully and for the purpose of commencing these proceedings in bankruptcy. This is denied under oath by the counsel who asked for and obtained the adjournment, and I give full credit to his statement to that effect. It is evident, however, that the delay thus obtained was availed of by some of the creditors, who had asked the appointment of Wormser and Kingsbury as receivers, and who felt aggrieved by the appointment of Lewis, for the purpose of preparing and presenting the petition and obtaining the injunction now in question, and this was done with the aid and knowledge of Wormser and Kingsbury. It does not seem to me that the fact that the delay so obtained was thus availed of would be a sufficient reason for this court's declining the jurisdiction of the petition or dismissing it. If it was, as is suggested, any indignity to the state court, this court cannot punish for it, and if the proceedings of this court are regular, the motives of the parties in instituting the proceedings are immaterial, nor is it any objection to the regularity of these proceedings that the alleged bankrupts, Wormser and Kingsbury, promoted and advised them.

There is no doubt, however, of the power and duty of this court to set aside summarily any process obtained by fraud and deception practiced upon itself. In re Scammon [Case No. 12,429]. The exercise of this power in proper cases is absolutely essential to the purity of the administration of justice. No

party, whatever may be the merits of his case otherwise, can take or hold any benefit from process so obtained. The power, however, should not be summarily exercised upon motion, unless the fact of the alleged fraud or deception is admitted or proved beyond question. If there is the slightest question of that fact, opportunity should be given for a determination of the fact by a reference or a trial in a proper and deliberate manner. In this case it stands confessed as to two of the six petitioners that their verification of the petition was knowingly false. They swore and were required to swear to the truth of the averment that they believed the six petitioners were one-fourth in number of all the creditors of the firm. One of them is shown to have signed a petition of creditors only five days before, in which his name appears as the thirty-second name in the order of signature. The authenticity of this paper is not denied, and all that he or his counsel are able to urge in extenuation of this obviously false verification of this petition, is that he did not know how many would sign the petition after he signed and verified it. The other is shown to have been the bookkeeper of the firm, intimately acquainted with their books and business, and to have sworn, a few days before, that the whole number of creditors was forty-three. He makes an affidavit, but attempts no excuse except that he did not know how many would sign after he had signed and verified. The authenticity of his affidavit to the number of the creditors is not denied, and it is obvious he can neither deny nor explain the falsity of his verification. It is obvious therefore, as to these two petitioners, that they are self-condemned. They have made their own case, and it shows conclusively that their verification, on which the order and injunction were obtained, was knowingly false. The explanation made on their behalf—that they expected or may have expected other creditors to sign after they had signed and verified the petition—while it may mitigate the moral turpitude of their act, cannot for a moment be allowed to affect the result, so far as they are concerned. It does not alter the fact that the verification made by them, when made and put in the hands of their attorney, was knowingly false, nor that that false verification was used by and on behalf of the petitioners to procure the order and injunction. And if the explanation excused the moral or the legal turpitude of the false oath, the very fact urged in excuse would be fatal to the maintenance of the petition so far as they are concerned, since in the case supposed, and assuming that they expected the requisite number to sign before the petition was presented, on which assumption alone the excuse has any meaning, they never consented, nor with the knowledge of the facts that they had could they innocently consent, to the petition being presented to the court until the requisite number of creditors had become parties to it, and this never having been done

the petition was not presented with their consent, and neither before its presentation could they, without an act of deception towards the court, consent to its presentation, nor since its presentation, without such deception, could they ratify what was done for them. So that as to them in the case supposed the petition was filed and presented without their authority, if their attempted excuse is of any account.

It is urged at the bar that, from the necessity of the case, creditors' petitions are often hurriedly prepared, and that a practice obtains of having creditors sign and verify, with the understanding that other creditors, to the requisite number and amount, shall afterwards sign; so that when presented to the court the petition shall in fact conform to the statute in respect to the number of the petitioning creditors and the amount of their claims. But it is perfectly plain that such a practice, if it has ever existed, is in direct violation of the statute, which requires the petition to be joined in by such number of creditors as constitute, or believe themselves to constitute, one-fourth in number and one-third in value, and to be verified by the petitioning creditors before any order to show cause or injunction can issue, or, if there are more than five, by the first five signers of the petition.

It is perfectly plain that the petitions prepared in the manner above referred to are not, in fact, verified as required by the statute. When the verification is made it is false in fact and no verification to the petition as in fact presented is actually made, although on the face of the paper it purports to have been made. The requirement of the statute as to verification is a safeguard thrown around the rights of property of the citizen. Without such verification of the petition in the very form in which it is presented to the court, the law does not allow the issue of this process which results, or may result, in depriving citizens of the enjoyment and use of their own property, and in its sequestration for the benefit of their creditors. It is, therefore, matter of substance and of right, and is not to be dispensed with under cover of an apparent compliance with the act. This practice, if it has ever existed to any extent, has obtained without the knowledge or suspicion of its existence on the part of this court, and it may as well be understood that such practice will not only subject the petition so prepared to summary dismissal, but will render all concerned in preparing and presenting them subject to the grave consequences which result from the practice of fraud on the court. No considerations of urgency or of importance to the parties of the relief sought by the petition, or of danger of losing the benefit of the act, can excuse such practice to any extent, or under any circumstances.

It is urged, however, that the other four petitioning creditors are innocent of the

fraud; that it does not appear that they knew that the six did not constitute one-fourth in number of the creditors of the firm, and it is insisted that the petition is good as to them, and that the motion to dismiss should therefore be denied, especially as a supplemental petition has been filed, signed by a very large number of creditors, making with the four a large majority of all the creditors. It is true that it is not certain on the evidence that the other four creditors at the time of their signing and verifying the petition knew that the averment that the petitioning creditors were one-fourth in number of all the creditors was false. Enough appears to show that they probably knew it. Since the 25th of April it appears that this litigation has been active and bitter. Before this petition was signed these four creditors united with the other creditors in requesting the supreme court to appoint Wormser and Kingsbury as receivers; that request was signed by these four and thirty-one other creditors. It is improbable, upon the ordinary presumptions that must be drawn from the acts of parties in respect to their knowledge of their own affairs, that they were ignorant of the principal facts, as to the number of creditors and the amount of their claims, freely and publicly used in their own behalf in applications to the court in that litigation; one of the four also attended before the judge on the 7th of May, when counsel asked to be heard for these thirty-five creditors, and I am strongly inclined to think that co-plaintiffs or co-petitioners, in whose name and for whose benefit jointly with other plaintiffs or petitioners false and fraudulent papers have been presented to the court, cannot be held innocent of and not privy to the fraud and falsehood, where they are confronted with the conclusive evidence of the falsehood and fraud practiced in their name by their co-plaintiffs or co-petitioners, on a motion to vacate the proceedings by reason of the fraud, if they do not at least declare themselves by affidavit innocent of the deception, and especially if they make affidavits and do not disavow the fraud.

But however this may be, and assuming that if the petition could stand as the petition of the four, the doubt on this point must lead to an inquiry, by reference or otherwise, as to the participation of the other four in the fraud practiced on the court, I am clearly of opinion that the motion to dismiss must be granted, on the proof of fraud as to the two petitioning creditors whose verification is conceded or conclusively shown to have been false. If the statute authorized any creditor or creditors, and not any particular proportion in number and value, to institute this proceeding, there would be ground for the argument that if the four innocent petitioners successfully disavowed the fraud practiced in their name, they might be permitted to continue the proceedings after striking out the petitioners guilty of the fraud; but that is not the case. The statute authorizes creditors jointly constituting one-fourth in number and one-third in value to institute and carry on the proceeding. The case is the joint case of all the petitioners. The court cannot entertain jurisdiction and issue the order to show cause unless it be alleged that the petitioners—that is, all of them jointly—are or believe themselves to be such one-fourth in number, and before any order can issue it is essential that this averment shall be supported by the oaths of all the petitioners, or, if they are more than five in number, by the oaths of the first five signers, to the truth of the petition. If, therefore, the verification of two of the five is set aside and shown to be a nullity, as knowingly false, there does not remain a petition conforming in substantial respects with the requirements of the statutes upon which any order can issue or any relief be given. The verification of the other four is not a compliance with the statute. It is impossible therefore to separate the true from the false, so that the petition can be sustained. That which appears on the face of the papers to be a compliance with the statute, and which justified the issue of the order to show cause, is a sham. It produced the appearance of jurisdiction for the issue of the order and injunction, when in reality there was no jurisdiction. The case is not a proper one for amendment. Verifications have been allowed to be amended, but how could these verifications possibly be amended? There is not one of the petitioning creditors who could now take oath to the truth of that petition. Amendment is neither possible nor proper in such a case. Amendments are allowed to correct innocent mistakes where parties have acted in good faith, and they are also allowed only to conform the papers to the facts. Here the only amendment possible on the facts would be to strike out all the verifications and part of the material averments of the petition. As to amendments, see In re Hanibel [Case No. 6,023]; General Order No. 7.

The statute provides that if it appears that the requisite number of creditors have not joined in the petition, other creditors may join in such petition within a time allowed by the court, not exceeding twenty days. I think this provision is intended to meet the case of a petition originally filed in good faith, where, by reason of their ignorance of or misinformation as to the number of creditors, the petitioners have been led to believe that they constituted the requisite proportion, and have so sworn. I do not think it was intended or can be so construed as to allow creditors recklessly and falsely to make and swear to their petition which they knew to be false, and then to have others join in and carry it on. It is however insisted that the court will, in its discretion and in furtherance of justice, deny the motion to dismiss the petition on the ground that it appears,

as is alleged, that, unless adjudication shall be made on the basis of this petition, filed the 7th of May, the alleged bankrupts Wormser and Kingsbury and their honest creditors will suffer great and irreparable injury through the proceedings in the state court and the appointment of the receiver by that court, and through what has been declared by their counsel to be the oppressive and unjust proceedings of the state court. The suggestion is based upon a total misconception of the true relations of the federal to the state courts.

Whenever the jurisdiction of the court of bankruptcy is properly and in good faith invoked in the manner prescribed by the act of congress [of 1867 (14 Stat. 517)], the court is bound to assume and exercise that jurisdiction. It cannot be properly refused, and it is not a matter of discretion. The orders and decrees of the court, duly made in the exercise of that jurisdiction, are binding and controlling on all persons; and the state courts can do no act and make no decrees or orders that shall nullify or prevent the free execution of the lawful decrees of this court, nor create any rights which impair or abridge any rights or interest which are created under the lawful orders of this court. But with the acts of the state courts, done in the due exercise of their jurisdiction, not conflicting with the proper orders, decrees and jurisdiction of the federal courts, the federal courts have nothing whatever to do. Such acts are wholly outside of the cognizance of the federal courts. They cannot directly or indirectly, without the most obvious impropriety, undertake to declare, recognize or base any action of their own upon the supposed or alleged impropriety of acts of the state court done within the proper and exclusive range of their jurisdiction. To do so, or to attempt to do so, would be irregular, impertinent, and fraught with great public mischiefs.

The appeal, therefore, that has been made to this court in the present case, to allow its action in this matter to be affected in any way by the alleged oppression or failure of justice to which the alleged bankrupts, Wormser and Kingsbury, or their creditors, may have been subjected in the proceedings of the supreme court of New York, is entirely futile. That is a matter with which this court has absolutely no concern. If the parties are so aggrieved, the constitution and laws of New York give them their redress; or if not, the federal courts are not established for any such purpose, and can neither form nor give effect to a judgment thereon. They were not established to protect the people of New York against their own courts, and can only assume, upon the principles of comity, that all things done by other courts exercising an independent jurisdiction, within the proper limit of that jurisdiction, are done rightfully and in the due and proper administration of jus-

tice. I must decline, therefore, to entertain any question concerning, or to express any opinion upon, the alleged improper, unjust and oppressive acts of the state court, or to permit the alleged existence of such facts to control in any way the action of this court even in a matter of discretion, if such it is, upon which I am called to act; and the fact that no opinion is here expressed on the question raised, as to the propriety of the conduct of a judge of the state court, must not be deemed by implication a reflection upon the proceedings of that court, because in my view of my duty I think I am bound as a judge of this court not to take the matter into consideration at all and to avoid all expression of opinion thereon.

It is, however, still urged that it is the obvious interest of all the creditors of the firm and of the two partners, Wormser and Kingsbury, who alone, it is said, have any real interest in the property of the firm, that this creditors' petition should stand, in order that in case of an adjudication the title of the assignee may relate back to the time of the filing of this petition, and that it is ruin to them all to have this petition now dismissed. Even if the misfortune were as great as it is represented, still the petition must be dismissed. As to either of the alleged bankrupts, it is his right to have the order to show cause and the injunction set aside; for as to him the petition never was rightfully and truly sworn to in compliance with the statute, and I see no way in which the petition can, by amendment or otherwise, be made the basis of any other order to show cause; and as to the court, it is a matter affecting its honor; and to protect the court and its suitors against the like imposition the petition should be dismissed, since it was by fraud and perjury made the instrument by which the court was induced to grant the orders to which the parties were not entitled, and but for their false oaths would not have obtained; and if the court should, in a single instance, for the sake of saving parties from apprehended loss or damage, become a consenting party to such a transaction, the effect would be more disastrous to public and private interests than the wreck of many fortunes.

Other important and interesting questions were discussed by the learned counsel, but the disposition of the case makes it unnecessary to determine them. I am satisfied, however, that the injunction issued in this case, in so far as it deviated from the form of injunction ordinarily issued on a creditors' petition, in the language of the statute, which restrains the debtor and any other person from making any transfer or disposition of any part of the debtor's property not excepted by the bankrupt law from the operation thereof, and from any interference therewith until the hearing on the petition, was unnecessary and not in accordance with the prac-

tice of the court; and without determining how far such receiver is subject, after the filing of the petition, to the jurisdiction of this court upon the facts disclosed in this case, I simply say that the injunction issued in this case is not to be deemed a precedent in any other case of the like kind.

Order to show cause and injunction vacated and set aside and petition dismissed.